# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RODNEY THOMAS, | : | |
| v. | : | CIVIL ACTION NO. RWT-10-2274 |
| | | CRIMINAL NO. PMD-06-4572 |
| UNITED STATES OF AMERICA. | : | |

## MEMORANDUM OPINION

On August 19, 2010, Rodney Thomas ("Thomas") filed a Petition for Writ of Error Coram Nobis pursuant to 28 U.S.C. § 1651. ECF No. 1. Thomas, a resident of Prince George's County, Maryland, seeks to set aside a conviction that arose out of a traffic stop on the Baltimore-Washington Memorial Parkway. For the reasons set forth below, the court will deny Petitioner's request.

## FACTS

In the early morning hours of September 24, 2006, Thomas was stopped by the United States Park Police for speeding on the Baltimore-Washington Parkway, an area administered by the National Park Police. ECF No. 6, Ex. 5 at 5-6. One of the officers making the stop asked Thomas if he had a weapon in the car, and Thomas indicated that he did. Following a search, the officer found ammunition in the trunk and a loaded semi-automatic handgun under the passenger seat. *Id.*, at 6-7. Thomas was charged with speeding, improper display of his license plate, other traffic offenses, and a weapons charge. On January 8, 2007, Thomas entered a guilty plea before the Honorable Thomas M. DiGirolamo to, *inter alia*, one count of possession of a weapon in violation of 36 C.F.R. § 2.4(a)(1)(i), which prohibited the carrying of a weapon on National Park

property.[1]  Thomas was sentenced on the weapons charge to pay a $215 fine, a $10 special assessment, and a $25 processing fee.

At the time of his arrest, Thomas was working as a security guard for a Baltimore company and also worked part-time as a NASA Security Police Officer.  During the traffic stop, Thomas showed police various documents in his possession.  A document from the State of Maryland entitled "Security Guard Certification No. 102-13422" identified Thomas as a licensed security guard.  ECF No. 6-1.  A document issued by NASA and entitled "Certificate of Authority to Carry Unconcealed Firearms No. 07927" provided that Thomas could "carry unconcealed firearms only in the performance of official NASA duties limited to the nature and location shown below," referencing the Goddard Space Flight Center.  ECF No. 6-2.  Another NASA document identified Thomas as a "contract security police officer . . . granted the authority to carry firearms and to make an arrest without warrant in accordance with" NASA regulations.  ECF No. 6-3.

Attached to the Government's Answer is October 8, 2010 correspondence from Maryland State Police TFC A. Knaub, Handgun Permit Section Licensing Division to AUSA Weisman.  ECF No. 6-4.  The correspondence states:

> A search of the records of the Maryland State Police, Handgun Permit Section, reveals that the above listed individual [Rodney Cameron Thomas] submitted a renewal application which was approved on May 5, 2005.  **The permit was revoked on September 8, 2006.**  The applicant's permit contained the following restriction; Armed on any Maryland Licensed Security Guard Agency job assignment or property only and while actively engaged as a Maryland Certified Armed Security Guard for same. (ON DUTY IN MD ONLY) (Not Valid where firearms are prohibited).  *Id.* (emphasis added).

---

[1] Thomas also entered a guilty plea to a charge of speeding and was sentenced to pay a $215 fine, a $10 special assessment, and a $25 processing fee.  That conviction is not at issue here.

Thus, at the time of his arrest on September 24, 2006, Thomas's restricted gun carry permit had been revoked by the State of Maryland. Thomas has been declared ineligible for employment with any public safety agency within the Prince George's County Government as a consequence of his weapons conviction. ECF No. 1 at 4.

## ANALYSIS

Thomas claims that (1) his due process rights were violated because his guilty plea was not knowingly and voluntarily entered; (2) he was denied effective assistance of counsel at the time he entered his plea; and (3) his Second Amendment right to bear arms within a national park was impermissibly infringed. ECF No. 1 at 4. Thomas seeks a writ of error coram nobis to vacate his guilty plea and remand his charges for a new trial. None of Thomas's contentions are sufficient to justify the issuance of a writ of error coram nobis.

Federal courts may grant relief from a conviction by writ of coram nobis after a petitioner has completed his sentence. *See* 28 U.S.C. §1651(a) ("[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.") Coram nobis relief is an "extraordinary remedy" that should only issue "under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954); *see also United States v. Mirza*, 45 F.3d 428, at *1 (4th Cir. 1995) ("A writ of error coram nobis may be granted to vacate a conviction only if a fundamental error occurred and there is no other remedy available.")

To secure a writ of error coram nobis, a petition must demonstrate that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States*

*v. Bazuaye*, 2010 WL 4366456, *1 (4th Cir. 2010) (citing *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir. 1987)). Criminal proceedings enjoy a presumption of correctness and the burden rests on petitioner to overcome this presumption. *See Morgan*, 364 U.S. at 512.

Thomas meets the first requirement for coram nobis relief because he is not in custody and therefore cannot pursue habeas corpus relief. *See United States v. Stanford*, 990 F. Supp. 402, 405-06 (D. Md. 1997). Thomas alleges that he meets the third requirement because he is unable to pursue his chosen career in law enforcement. The Fourth Circuit has not addressed whether the inability to pursue a career in a given field is a sufficient "adverse consequence" to justify the issuance of a writ of error coram nobis. However, the Supreme Court has stated in the related context of federal habeas corpus review that the "deprivation of the right . . . to engage in certain businesses" may be a sufficient collateral consequence to justify habeas corpus relief. *Spencer v. Kemna*, 523 U.S. 1, 8 (1998). The Seventh Circuit has similarly suggested that the loss of the right to hold occupational licenses might be a sufficient collateral consequence to justify issuance of a writ of error coram nobis. *See United States v. Keane*, 852 F.2d 199, 203 (7th Cir. 1988) (disbarment after conviction could support issuance of the writ). Therefore, it is likely that Thomas' permanent inability to work in his chosen law enforcement profession is a sufficient adverse consequence to satisfy the third prong of the *Bazuaye* test.

Even assuming, *arguendo*, that Thomas is suffering an adverse consequence of his conviction, Thomas fails to satisfy the second and fourth prongs of the test articulated in *Bazuaye*. Thomas's petition fails to reveal any reason for the forty-three month delay between the entry of his guilty plea and the filing of the instant petition.

However, even if his petition had been more timely, Thomas's failure to identify any fundamental error that occurred in the taking of his guilty plea is fatal to his petition. The Fourth

Circuit has recognized that a writ of error coram nobis may issue where there is evidence that petitioner's guilty plea was not knowingly or voluntarily made. For example, in *Roberts v. United States*, 158 F.2d 150, 150 (4th Cir. 1947), the Fourth Circuit reversed the district court's denial of a writ of error coram nobis because there was evidence in record that petitioner was suffering from a mental disability at the time he entered his guilty plea, and Petitioner was not represented by counsel at the time he entered the plea. *Id.* The Fourth Circuit held that "the mental competence of [the petitioner] in connection with whether he could or did competently waive counsel and whether he could or did enter an intelligent plea of guilty was a matter material to the validity and regularity of the legal proceeding itself." *Id.* at 151. In reversing, the Fourth Circuit directed the Court to rule on whether petitioner's mental disability rendered him unable to waive the right to counsel or to enter an intelligent guilty plea. *Id.*

Thomas argues that the Court committed error by failing to assure that his plea was knowingly and voluntarily made; by failing to instruct him "of any of the elements of the charges against him or that the charge required that he possessed the weapon on National Park property;" and by failing to ensure that the plea was entered in the absence of "coercion, promise or threat." ECF No. 1. at ¶¶ 11-12. However, there is no evidence in the record to support Petitioner's contention that the plea was not knowingly and voluntarily entered.

Pursuant to Thomas's plea agreement with the government, Thomas pled guilty before a magistrate judge to a petty crime with no potential for incarceration. *See* ECF No. 6-5 at 5:10-13. Rule 58 of the Federal Rules of Criminal Procedure provides that the Court must not accept a guilty plea in such a case "unless satisfied that the defendant understands the nature of the charge and the maximum possible penalty." Fed. R. Crim. P. 58(c)(1). If a defendant is

convicted on a plea of guilty, the court must also "advise the defendant of any right to appeal the sentence." Fed. R. Crim. P. 58(c)(4).

The partial transcript provided by the government demonstrates that Thomas understood that he was pleading guilty to "speeding and possession of a weapon" and that "the maximum fine for each charge could . . . get up to $5000." *See* ECF No. 65 at 5:10-14. He was further informed by the Court that he "did not have to plead guilty to anything if [he didn't] want to" and that by doing so, he "[gave] up his right to go to trial." *Id.* at 5:7-9. Thomas did not dispute the facts set forth in the Government's proffer, and simply "was not aware of the law that it was federal land" "and [because he] was sworn in by the Federal Government, . . . [he] felt that [he] wasn't doing anything too wrong." *Id.* at 8:23-25, 9:1.

It is clear from the record that Thomas understood the nature of the charges and the potential penalties that could be imposed if he pled guilty. In addition, from his own statements and his attorney's statements on his behalf, it is clear that Thomas's attorney researched the nature of the weapons charge and communicated it to him. This is sufficient to satisfy Fed. R. Crim. P. 58(c)(1). While the transcript fails to show that Thomas was informed of his right to appeal as required by Fed. R. Crim. P. 58(c)(4), this defect alone is insufficient to constitute a fundamental error that undermines the "validity and regularity of the legal proceeding itself." *Roberts*, 158 F.2d at 151. Thomas has presented the Court with no evidence that his plea was not knowingly and voluntarily made, or that his plea was the product of coercion, promise or threat.

Thomas also argues that he was denied effective assistance of counsel because his attorney failed to research and advise him of compelling defenses to the charges, as well as the

consequence that his law enforcement career would be effectively ended by pleading guilty to the weapons charge. *See* ECF No. 1 at ¶25.

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky,* 130 S.Ct. 1473, 1475 (2010). A defendant has been provided ineffective assistance of counsel only if counsel's representation "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Thomas argues that under the Supreme Court's recent decision in *Padilla v. Kentucky*, his counsel was obligated to advise him of the potential employment-related consequences of his guilty plea. *See* ECF No. 1 ¶25. Thomas reads *Padilla* too broadly.

The *Padilla* majority focused on the "unique nature of deportation" and relied on the fact that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation" in counseling her client on the merits of entering a guilty plea. *Padilla*, 130 S. Ct. at 1482. Thomas points to no authority supporting his claim that any competent counsel would advise a criminal defendant of potential employment-related consequences of a guilty plea. Deportation is a much more severe consequence of a criminal conviction than being deprived of the ability to pursue one's chosen profession. Given the care with which the *Padilla* Court limited its decision to the deportation context, this Court declines to extend it to the facts of this case.

Further, Thomas has provided no evidence that would allow the Court to conclude that his counsel did not research possible defenses to the charges to which he pled guilty.

Accordingly, Thomas fails to articulate any viable ineffective assistance claim under *Strickland* and *Padilla*.

Finally, Thomas argues that his Second Amendment right to bear arms was impermissibly infringed and the issuance of a writ of error coram nobis is therefore appropriate. Thomas argues that the conduct of which he was convicted would not today constitute a crime due to an intervening amendment of Department of the Interior regulations, and asserts that he is entitled to the benefit of that amendment.

On December 10, 2008, over two years after Thomas pled guilty to violating 36 C.F.R. § 2.4(a)(1)(i), the Secretary of the Interior promulgated amended regulations which allowed those who could legally possess a firearm under federal and state law to possess a firearm in a National Park. The amendment provided:

> [N]otwithstanding any other provision in this Chapter, a person may possess, carry, and transport concealed, loaded, and operable firearms within a national park area in accordance with the laws of the state in which the national park area, or that portion thereof, is located, except as otherwise prohibited by applicable federal law." 36 C.F.R. § 2.4(h).

Though a writ of error coram nobis may be issued where there is "a *retroactive* dispositive change in the law" *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988) (emphasis added), the Fourth Circuit recently held that the above amendment is *not* retroactively applicable. In *United States v. Masciandaro*, 2011 WL 1053618, at *6 (4th Cir. March 24, 2011), the Fourth Circuit held that a defendant was not entitled to the benefit of the change in the regulation, even though his trial occurred *after* the regulation had been amended. The Court relied on the general savings statute, 1 U.S.C. § 109, and held that in the absence of explicit language to the contrary, the regulations in effect at the time the offense conduct occurred

applied to the defendant. *Id.* Thomas's Second Amendment rights were not infringed by prosecuting him for a violation of a regulation in force at the time of his traffic stop.

Moreover, the Government has provided evidence that Thomas was not legally entitled to carry a firearm at the time of his arrest. Maryland law prohibits the carrying of a handgun without a permit, except is certain limited circumstances not applicable here. *See* Md. Code Ann., Criminal Law Art., § 4-203(a) & (b)(2). At the time of his arrest, Thomas's permit to carry a firearm in Maryland had been revoked. *See* ECF No. 6-4.

Moreover, Thomas was entitled to "carry unconcealed firearms only in the performance of official NASA duties limited to the nature and location" identified on his "Certificate of Authority to Carry Unconcealed Firearms." ECF No. 6-2. This location was the Goddard Space Flight Center. *Id.* This limited right did not extend further and entitle him to transport a loaded firearm to or from his workplace under the seat of his vehicle. Thomas' Second Amendment rights were not infringed.

A separate order follows.


April 15, 2011                      /s/
Date                             Roger W. Titus
                                  United States District Judge